The Honorable Judges of the United States Court of Appeals in the 4th and 7th Judicial Surveys. Eerie, eerie, eerie. All persons having business before the Honorable Court are admonished to draw near to give their attention in the foreground setting. God save the United States and the Honorable Court. Good morning, everyone. Our first case up this morning is United States v. Charles Thomas 22-1377. Surround me whenever you're ready. Good morning, Your Honors. May it please the Court. My name is Colleen Ramay and I'm with the Federal Defender's Office on behalf of Charles Thomas. The guidelines provide that all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant that occurred during the commission of the offensive conviction, and all harm that resulted from these acts and omissions, is to be considered relevant conduct when sentencing a defendant. This sweeping definition brings countless acts within the scope of relevant conduct to be considered as part of a defendant's sentencing process. Ms. Ramay, do you agree that the argument that you're presenting to us today was not something that was raised below with the district court? Yes, Your Honor. And the government has argued that you made a strategic decision at sentencing to argue that the murder conviction was relevant conduct because that would have turned into a guideline calculation of life. I know there was a 20-year maximum here. How do you respond to the government's argument that you've waived this issue because you didn't raise it below and there was a logical strategic argument not to argue it was relevant conduct given the consequences on the guideline? Yes, Your Honor. When you look at the entire totality of the circumstances at sentencing, it is clear that the natural conclusion is that this was a guideline provision that was simply missed. The guideline itself makes concurrent time and credit for time served mandatory. It says shall. And the fact of the murder conviction was present and discussed at some length in the The attorney for Mr. Thomas below specifically asked the court to consider the fact that he had already been serving this lengthy sentence in the state court, asked the court to discount the sentence that he'd impose and or run at least a portion of the sentence concurrently. This was something that was front and center before the court. The idea that the strategy would be to minimize the other conviction in the state court. But it's not just the mere fact of the conviction. It's the consequences on the guidelines of the conviction. Correct. That if you had argued, you being his counsel, had argued that the murder conviction was My guess is there might be a different argument here if that argument had been made below. But the guidelines would be 20 years to run concurrently with the state sentence of 60 years. But isn't that up to the court to determine the concurrence? Well, the the guidelines provide shall. And this court's they say shall. And this court has looked at Section 5G 1.3 and B and compared it to when there is an already discharged sentence and noted that the language in 1.3 B is mandatory. And how does that square with the advisory nature of the guidelines? That is something that, as to my knowledge, this court has not squarely addressed. The 11th Circuit has said that it was still binding, still mandatory. And it goes along with the intent of the guidelines and the intent of sentencing individuals. But does the intent of the guidelines matter anymore post-Booker? The Supreme Court has made very clear that the guidelines are only advisory, that they can't bind us. But they are still the touchstone of sentencing. They provide the lodestone. They are what every court starts from. That's exactly right. Starts from, but doesn't enter. Absolutely. And I mean, I don't know that I couldn't point to something that this court has maybe said before that would say that the court wouldn't have some sort of discretion to impose a longer sentence. But I think that if the court had just said, well, the guidelines are 20 years and I'm imposing 20 years consecutive, we would be having, we would be here arguing that the court failed to actually consider all of the provisions of the guidelines appropriately and what the guidelines actually recommend, which is giving credit. Because when you're looking at a sentence and you're considering all of the conduct that was part and parcel of a whole course of conduct, which is what the relevant conduct provisions are designed to do, this 5G 1.3B provision gives us, tells the court in sentencing that if you are already serving a sentence for part of that second, when we're looking at 5G 1.3B, it's noted that it's relevant conduct. Yes. And so let's start. What is the standard proof for a defendant to establish that the conduct is relevant? Well, what's interesting is that typically it's the government who's trying to sweep in everything and the defendant that's trying to keep things out. So it's a preponderance of the evidence standard to figure out what is relevant conduct. The other issue that we're dealing with here is that the court was working off of misinformation. I think it's undisputed in this case that the PSR did not accurately portray the date of death of Ms. Green, and it's a close linkage. But how does that, I'm not sure that was raised below, and how would that impact the relevant conduct issue? Well, because they, I mean, Mr. Thomas was arrested when Ms. Green died, and then the sweep of his house revealed evidence that was pertinent to both the murder charge and the drug charge in federal court. And so when you're talking about relevant conduct and this broad language of all acts and omissions committed, aided, abetted, all of these things, during the commission of the offense of conviction, his offense here was possession with intent to distribute. The PSR told the judge that Ms. Green had died two months earlier when, in fact, she died at the same time. How is that relevant, though, to the first-degree murder charge in the state court? Because it's the understanding that he was convicted of both theories of death in the state court, both by that of probably of ingesting an illegal substance, forcing the victim to ingest an illegal substance, or blunt force. And then in count two, the theory was that it was by blunt force that the victim was murdered, and he was convicted for both. And how is that relevant to a distribution of illegal substance in the federal case? Well, it's not 100% clear from those records how exactly the state proved their case. The theory is not proven, but however, count one and count two, there are two separate theories there. And in count two, the jury found by blunt force the victim was murdered. And she also, it would appear that she also had cocaine in her system, and they used a lot of the evidence of his distribution of cocaine in order to convict him. Now, that was alleged. The distribution of cocaine was not limited to the search of the residence. There was also a two-month ongoing FBI investigation that occurred preceding the search warrant of the residence. Right. That attributed to the distribution conviction, which demonstrated the defendant selling to confidential sources. That's accurate, Your Honor. And so I'm trying to make the connection of the relevancy. Well, the fact that the death occurred during his conduct, for starters, that is the plain language of the guideline, that it was what happens during it. The evidence of his drug distribution was used against him in trial at the state, and the government proceeded at least in part on a theory that he forced her to ingest cocaine, which is directly linked to his distribution or in possession with intent to distribute. You're into your rebuttal time. Yes. If you want to save the last little bit. Thank you so much, Your Honor. Thank you. Mr. Dean? Good morning, Your Honors. Good morning. May it please the Court, David Dean on behalf of the United States, the appellee in this matter. The 144-month consecutive sentence imposed by the district court should be affirmed in this case for three separate and independently sufficient reasons. The first of those is waiver, which was addressed to some extent in the questioning to my colleague. But in the Brody case, this court considered a situation where the defendant raised certain objections to the PSR in the district court and then was asked by the district judge, do you have any further objections? And the defendant by counsel said, I don't. That fact pattern, which is exactly the fact pattern we see here, in the Brody case, this court called it the paragon of intentional relinquishment. And, of course, intentional relinquishment is the formula for waiver, not mere forfeiture. And I think the facts of this case show that the argument for waiver is actually considerably stronger than was present in Brody. Mr. Dean, what are the strategic reasons? I'm sorry? Yes, Your Honor. I think the primary principle strategic reason to not argue, I apologize if I'm stating the obvious, but to not argue that your client should be deemed culpable for murder in addition to possession with intent to distribute, knowing that the guideline would increase, as has already been noted, all the way to life. And especially because the guidelines are, if we were under a mandatory guideline regime, I think the analysis would be different because it would certainly be a high-risk, high-reward proposition at that point because if you win, then you're going to get a complete mandatory sentence. Here, knowing that the guidelines were not mandatory but only advisory, and given Judge Gilbert's repeated insistence that he was not willing to, he said at least three times, if I were to impose this sentence concurrent, you would receive no punishment for your federal crime, and he wouldn't do that. And so even if the guidelines told him you shall impose them concurrent, the guidelines are merely advisory, and I think in that instance it would certainly be a logical strategic choice to forego that argument, especially considering what the counsel did at sentencing was he did argue for a concurrent sentence. Under the 3553A factors, he argued the sentence should be concurrent but made no mention of the fact that his client should be considered a murderer for purposes of federal sentencing. So the other reason why I think the argument for waiver is particularly strong here is that the objections that Mr. Thomas did make in the district court are actually incompatible with the argument he's making on appeal. What I mean by that is this. He objected to the entirety of the drug quantity, effectively saying I didn't possess any cocaine. Now he argues not only did he possess the cocaine, but he used it to commit murder. I would argue those arguments are mutually incompatible and are pretty clear evidence of waiver, certainly stronger than was present in Brody where this court did find waiver. Mr. Dean, what was the state's theory of the case with respect to the murder by cocaine? Your Honor, I will confess that my knowledge on that is essentially limited to what you have before you, and of course that assumes that this court does take judicial notice, which are nowhere in the record. If we limit it merely to the record on appeal, I submit that there is literally no mention of cocaine in terms of being related to the murder in any way. The PSR, which is unobjected to, said that Mr. Thomas beat and disagreed to death. No mention of cocaine whatsoever. If this court takes judicial notice of the records that have been submitted on appeal, this moves to the second ground on which this court can affirm. There simply is no plain error present. And what I mean by that is, as has already been noted, to establish relevant conduct by a preponderant standard, it must be more likely than not that the conduct was related. And so an amended indictment which says only in the alternative that possibly cocaine was involved in the murder, that simply doesn't prove by a preponderant standard that cocaine was involved. And thus, I mean, the entire theory of relationship is undercut. Well, I gather the district judge thought even if cocaine was involved, it still wouldn't be relevant conduct for this particular federal offense. As far as I know, Your Honor, I would submit that the district court never even considered the possibility that the relationship was present. Because, again, the idea of cocaine being used in the murder in any way was not presented at the district court level. That is, to my knowledge, simply a matter of what's raised on appeal through this petition to take judicial notice of the state court records. What's the government's position on whether or not the shall language in 5G 1.3 is mandatory versus discretionary in light of the discretionary guideline world that we live in now? Your Honor, I think the rationale of the Booker holding, which was that district court's sentencing discretion cannot be fettered by the advisory guidelines ultimately, it ultimately must be the district court's determination under the 3553 factors. The idea that any portion of the guidelines is actually mandatory and binding on the district court judge, I think directly runs afoul of Booker. Has any circuit held that with respect to 5G 1.3? That it is not mandatory? This court, Your Honor, I can tell you post-Booker has considered that provision and referred to recognizing the language says shall has referred to it as a recommendation. So I think at least in dicta, this court has signaled that it remains not binding but merely advisory. Any other circuits? I'm aware of that case. We haven't addressed it head on. Has any circuit addressed it head on and found that it's advisory? I'm not aware of it. I apologize for interrupting. I am not aware of any case, Your Honor. I'm happy to do additional research. That's okay. Thank you. I want to turn now to the third and final reason why I believe this court can affirm, again, independently of the first two reasons being waiver and the lack of any plain error, and that is the fourth prong of plain error review where, of course, review and correction of any plain error under Rule 52B remains discretionary, and this court, of course, doesn't exercise discretion to correct those errors unless failure to do so would harm the fairness, integrity, or public reputation of judicial proceedings. I think this is a case similar to the Maez case where affirmance actually protects rather than harms the fairness, integrity, or public reputation of judicial proceedings, and this is why. When Judge Gilbert sentenced Mr. Thomas to 144 months consecutive sentence, it was with no sense that that was including the murder's relevant conduct. In other words, what we know is that Judge Gilbert believed that 144 months was a sentence consecutive was a sentence necessary to account for his drug distribution only. The idea that the fact that Mr. Thomas was a drug trafficker and a murderer rather than just a drug trafficker should result in effectively him receiving 12 years less imprisonment is absurd on its face. It would certainly frustrate Judge Gilbert's sentencing discretion, and it's not the type of error that this court must or should correct under Rule 52B. For all these reasons, the government respectfully asks that the judgment of this court be affirmed, and unless there are any further questions, I'll yield the rest of my time. Thank you, Mr. Thiem. Ms. Romay. Just briefly, Your Honors. I apologize for not submitting this in writing, but in preparing for this argument, I did find a case called United States v. Henry, which is recorded at 968 F. 3rd, 1276. It's a case decided in 2020 from the 11th Circuit, and it holds that sentencing adjustments under Section 5G 1.3 are mandatory post-Booker. Could you give me that citation one more time? Absolutely, Your Honor. It's United States v. Henry, 968 F. 3rd, 1276. Great. Thank you, Ms. Romay. Thank you so much, Your Honors. The court will take the case under advisement.